## MARTIN v. LOWER COAST CONST. CO.

(Circuit Court of Appeals, Fifth Circuit. January 20, 1927. Rehearing Denied February 10, 1927.)

No. 4858.

Seamen ⟂29(5)—Evidence held insufficient to show negligence of construction company in not equipping quarter boat with searchlight and railings.

In libel against construction company for death of superintendent of quarter boat, who fell overboard as boat was being towed to a new location, evidence showing failure to provide searchlight on boat, and to provide railings at ends and sides thereof, *held* not to establish negligence of construction company, warranting recovery.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by Celia Martin for the death of her husband, George Martin, against the Lower Coast Construction Company. Decree for respondent, and libelant appeals. Affirmed.

John J. Wingrave, of New Orleans, La., for appellant.

J. C. Henriques and Frank T. Doyle, both of New Orleans, La., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Appellant complains of a decree dismissing her libel in personam against appellee on final hearing for lack of proof.

Appellant's husband, George Martin, was employed as superintendent on appellee's quarter boat, and, while that boat was being towed at night, stepped or fell overboard, and was drowned in the Mississippi river. The libel seeks to recover damages for his death, and charges appellee with negligence in failing to provide sufficient lights and a railing along the ends and sides of the quarter boat, so that employees could see where they were going at night, and be protected against falling overboard; and in failing to provide a searchlight and life-saving equipment for the purpose of rescuing employees from drowning.

Appellee used two quarter boats as living quarters for its employees while they were engaged in work on levees along the banks of the Mississippi river. These boats were kept moored along the levees, where they usually remained for months, and until it was desired to move them to a new location, when they were towed by tugboats specially employed for each particular occasion. Quarter boat No. 1, on which Martin, the deceased, had been employed for some time, was a barge 100 feet in length and 22 feet in width, upon which were living quarters, 80 feet long and 18 feet wide, so constructed as to leave outside floor space of 10 feet at each end and 2 feet at each side of the barge. There was no railing along these sides or ends, but a corridor extended through the center of the living quarters from one end to the other, and the small rooms or cabins in which the men slept opened into it from either side, and there were some doors, also, that opened onto the side platforms. No searchlight was carried, but the employees who lived on board were each provided with a lantern and a flashlight. There were on board ropes and planks, which are commonly used on like craft as life-saving equipment. The other quarter boat was built on the same general plan, but was smaller, and lacked about a foot of standing as high up out of the water. At the time of his death, Martin was superintendent of quarter boat No. 1, and it was his duty to make inspections at night.

In January, 1925, the Thompson Gravel Company contracted to move these two quarter boats, and for that purpose furnished a tugboat in charge of its own crew. In making up the tow, the small quarter boat was lashed alongside quarter boat No. 1, which in

turn was lashed alongside the tugboat. While the tug and the tow were proceeding, at night, up the river, against a strong current, cries for help from a man overboard were suddenly heard, and as suddenly ceased, before the position of the person in distress, who afterwards proved to be Martin, could be located or assistance given by those on board the quarter boats or the tugboat. The night was cold and dark, and most of the men on the quarter boats had retired; but as soon as possible two or three of them jumped into a small boat, that was being towed alongside quarter boat No. 1, and rowed out into the river; but by that time they were unable to see or hear the missing man. There were regular life preservers on the tugboat, and it also carried a searchlight, though some of the witnesses for appellant testified that they called for it to be turned on, and the master of the tugboat stated that he did not have one on board. At any rate, no use was made of a searchlight, or of any of the life-saving equipment.

We agree with the District Judge that the evidence fails to sustain any of the averments of negligence set out in the libel. Appellant's husband had a lantern and a flashlight, and these were sufficient for any purpose of inspection. From his long service he must have known that there was no railing along the sides or ends of the quarterboat. Besides, there was a safe passageway in the center, which could have been used. The evidence fails to show that the absence of a railing contributed to the cause of the accident. There was equipment enough to effect a rescue, if the drowning man had been close enough and his position in the water had been known. It is far from certain that Martin was alive when the search for him was begun; but, if he was still above the surface of the water, it is consistent with the testimony that he was out of reach of assistance, as the tug and tow were proceeding up the river and a swift current was carrying him down stream. It is hardly probable that a prudent employer would have taken the precaution to place searchlights on the quarter boats for possible use in rescuing its employees from the danger of drowning on the infrequent occasions when they were being towed from one point to another on the river, since for their own safety it was only necessary that they should take the reasonable precaution to stay inside their own quarters. It is true that upon Martin as superintendent rested the duty of inspection; but that duty, if performed with reasonable care, did not expose him to the risk of falling overboard. If, however, appellee's failure to provide a searchlight on the quarter boat be considered sufficient to constitute negligence, Martin, by reason of his knowledge of such failure, must be held to have assumed the risk involved in moving without a searchlight. It is mere conjecture to say that, if a searchlight had been used, Martin's position in the river would have been located, or, if it had been, that he could have been saved from drowning.

The decree is affirmed.